IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | **UNDER SEAL** |
| v. | ) | |
| | ) | Case No. 1:23-MJ-83 |
| ROBERT SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Matthew Brown, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") since 2015. I graduated from the Criminal Investigator Training Program and ATF Special Agent Basic Training. I am currently assigned to the Washington Field Division in Washington, D.C. My assignments include investigating the illegal possession and transfer of firearms, as well as violent crimes involving firearms. During these investigations, I have analyzed records; participated in the search and seizure of phone, email, and social media accounts; conducted mobile and static surveillance; conducted interviews; prepared and sworn criminal complaints; and participated in the execution of search and arrest warrants.

2. I make this affidavit in support of a criminal complaint and arrest warrant charging Robert SMITH ("SMITH") with making false statements with respect to the purchase of firearms, in violation of 18 U.S.C. § 924(a)(1)(A).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. All observations I did not

personally make were relayed to me by the individuals who made them or come from my review of records, documents, and other physical evidence during the course of this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

4. Through my training and experience, I am aware that federal law prohibits Federal Firearms Licensees ("FFLs") from selling a firearm to a non-licensee purchaser "unless the [FFL] records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 478.124(a). "Form 4473" refers to the ATF Firearms Transaction Record, Form 4473. I am further aware that the law requires FFLs to retain "as a part of the required records, each Form 4473 obtained in the course of transferring custody of the firearms." 27 C.F.R. § 478.124(b). Accordingly, any false statement a purchaser makes on a Form 4473 pertains to information an FFL is required by law to maintain.

### **SMITH's Firearms Purchases**

5. A review of SMITH's ATF National Tracing Center ("NTC") Multiple Sale Summary reports, other law enforcement databases, and FFL records, showed that, between August 21, 2020, and April 11, 2022, SMITH purchased approximately eighty-four (84) firearms during forty-one (41) separate transactions at various FFLs within the Eastern District of Virginia.

6. For each of the forty-one (41) transactions within the Eastern District of Virginia, SMITH was required to truthfully complete a Form 4473 and to present a valid Virginia identification. During each purchase, SMITH provided a Virginia driver's license that showed an address on 29th Street in Newport News, Virginia ("LOCATION 1") within the Easter District of Virginia. For question 10 of each Form 4473, SMITH listed his address as being LOCATION 1,

an address on South Rolfe Street in Arlington, Virginia ("LOCATION 2"), or a different address on South Rolfe Street in Arlington, Virginia ("LOCATION 3"), all within the Eastern District of Virginia.  In addition, SMITH responded "Yes" to a question on each Form 4473, indicating that he was the actual buyer of the firearms.  On a separate question on each Form 4473, SMITH certified by signature that his answers were "true, correct, and complete," and that he understood that "making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law."

7. As set forth below, four (4) of the firearms SMITH purchased within the Eastern District of Virginia were subsequently recovered by law enforcement officers in Maryland.  Based on my training and experience, these recoveries with short times to crime and outside of the state in which the firearms were purchased are indicative of an individual who is involved in firearms trafficking.

8. On January 12, 2022, officers of the Prince George's County Police Department ("PGPD") recovered a Sig Sauer, model P365, 9mm, semi-automatic pistol in the possession of Quadree Smith, who was stopped for suspicion of a narcotics offense.  For reasons set forth later in this affidavit, it is possible that Quadree Smith has a familial relationship with SMITH.  The serial number was obliterated at the time it was recovered but was later determined to be 66B387321.  The ATF NTC determined that SMITH originally purchased the firearm from C4A, an FFL, within the Eastern District of Virginia, on March 18, 2021.  This purchase occurred three hundred (300) days before PGPD recovered the firearm.

9. On January 27, 2022, PGPD recovered a Taurus, model G3C, 9mm, semi-automatic pistol in the possession of an individual with the initials A.S. during a traffic stop.  At the time of

3

his arrest, A.S. was in a vehicle with multiple convicted felons, including a prior ATF defendant who had been convicted of an offense related to firearms trafficking. The serial number was obliterated at the time it was recovered but was later determined to be ABL137553. The ATF NTC determined that SMITH originally purchased the firearm from C4A, an FFL, within the Eastern District of Virginia, on November 24, 2020. This purchase occurred four-hundred, twenty-nine (429) days before PGPD recovered the firearm.

10. On March 2, 2022, PGPD recovered a Canik, model TP-9, 9mm, semi-automatic pistol in the possession of an individual with the initials A.M. during a traffic stop. The serial number was obliterated at the time it was recovered but was later determined to be 21BJ09727. The ATF NTC determined that SMITH originally purchased the firearm from C4A, an FFL, within the Eastern District of Virginia, on October 29, 2021. This purchase occurred one-hundred, twenty-four (124) days before PGPD recovered the firearm.

11. On March 4, 2022, PGPD recovered a Taurus, model G3C, 9mm, semi-automatic pistol in the possession of an individual with the initials J.B. after J.B. accidentally shot someone. The serial number was obliterated at the time it was recovered but was later determined to be ACK351977. The ATF NTC determined that SMITH originally purchased the firearm from C4A, an FFL, within the Eastern District of Virginia, on November 13, 2021. This purchase occurred one-hundred, eleven (111) days before PGPD recovered the firearm.

**Interview of SMITH**

12. On May 2, 2022, law enforcement interviewed SMITH at a residence located on 24th Avenue in Temple Hills, Maryland that is associated with him in a commercial database commonly used by law enforcement ("SMITH's Maryland Residence").

13.     During the interview, SMITH confirmed that he uses the telephone number, 240-460-0745 (hereinafter, "SMITH's phone number"), and afterwards responded to a text message from law enforcement from SMITH's phone number.  Also, during the interview, SMITH stated that the residence he had just emerged from was not his but belonged instead to his wife.  SMITH stated that she resided there, while he resided primarily at a residence in Newport News, Virginia, the same city as LOCATION 1.  SMITH further stated that he had purchased firearms in Virginia.  When asked about a specific firearm, SMITH stated, "Give me the serial number.  And allow me to go through my inventory and check on that and see what's going on."  SMITH further stated that he possessed licenses to carry concealed firearms in Maryland, DC, and Virginia, and showed these licenses to law enforcement.

14.     The District of Columbia, Metropolitan Police Department ("MPD") provided records showing that SMITH applied for a Permit to carry a concealed weapon on September 10, 2020, and was issued that permit on or about September 16, 2020.  SMITH's address is listed in the records as SMITH's Maryland Residence.

15.     The Maryland State Police ("MSP") provided records showing that SMITH applied for a Wear and Carry Handgun Permit on June 19, 2020, and was issued that permit on March 30, 2021.  SMITH's address is listed in the records as SMITH's Maryland residence.

16.     An employee of the Arlington County Circuit Court provided records showing that SMITH applied for a Concealed Handgun Permit on June 11, 2020.  SMITH listed LOCATION 2 as his "RESIDENTIAL ADDRESS" on the application.

17.     A commercial database commonly used by law enforcement associated Quadree Smith, mentioned above in paragraph 8, with SMITH's Maryland Residence and identifies SMITH as a possible relative.  Also, the address listed on Quadree Smith's Maryland driver's license is

SMITH's Maryland Residence. For these reasons, it is possible that Quadree Smith has a familial relationship with SMITH.

**Contact with an attorney representing SMITH**

18. On May 4, 2022, I received a telephone call from an individual identifying themselves as John Pierce, an attorney representing SMITH. At the end of the conversation, Mr. Pierce stated that his advice to SMITH would be, "whatever you're doing, it needs to stop."

**SMITH's Listed Addresses in Virginia**

19. On May 6, 2022, I queried an open-source property records database for LOCATION 1. The listed owner will be shown here as, "LOCATION 1 OWNER."

20. On May 31, 2022, law enforcement met with LOCATION 1 OWNER, who stated that they are the current owner of LOCATION 1 and have resided there for several years. They stated that they knew SMITH and that their aunt is SMITH's wife. They further stated that SMITH had never been to LOCATION 1, had never resided there, and had never been in possession of a key to the residence. They further stated that SMITH's wife had arranged with them for a voter registration card in SMITH's name to arrive in the mail at LOCATION 1, and for LOCATION 1 OWNER to send the card to SMITH's wife. They further stated that they did receive the card in the mail and believed that they sent it to SMITH's wife, but did not recall specifically doing so.

21. On June 1, 2022, I queried an open-source property records database for LOCATION 2. The listed owner will be shown here as, "LOCATION 2 OWNER."

22. On June 3, 2022, law enforcement met with LOCATION 2 OWNER, who stated that they are the current owner of LOCATION 2 and have resided there since November 2021. They further stated that they know the previous owners, a couple who will be shown here as, "LOCATION 2 PRIOR OWNER 1," and "LOCATION 2 PRIOR OWNER 2." LOCATION 2

OWNER stated that they did not know anyone named Robert SMITH, and that SMITH did not, and had never to their knowledge, resided at LOCATION 2.

23. On June 3, 2022, law enforcement spoke with LOCATION 2 PRIOR OWNER 1 on the phone. They stated that they, their spouse, LOCATION 2 PRIOR OWNER 2, and their children, lived at LOCATION 2 from August 2017 to August 2021. They further stated that they did not know anyone named Robert SMITH, and that SMITH did not, and had never to their knowledge, resided at LOCATION 2.

24. On June 3, 2022, law enforcement spoke with LOCATION 2 PRIOR OWNER 2 on the phone. They stated that they, their spouse, LOCATION 2 PRIOR OWNER 1, and their children, lived at LOCATION 2 from August 2017 to September 2021. They further stated that they did not know anyone named Robert SMITH, and that SMITH did not, and had never to their knowledge, resided at LOCATION 2.

25. On June 6, 2022, I called the Arlington County Department of Real Estate Assessments and spoke with an employee who searched several databases for LOCATION 3 but was unable to locate any records. The employee stated, "It does not look like this address was ever real."

26. On June 7, 2022, I reviewed Virginia Department of Motor Vehicles ("DMV") records that indicated that SMITH completed an application for a Virginia driver's license on August 19, 2020, and listed LOCATION 1 as his address on the application. The records also indicated that SMITH provided SMITH's Maryland Residence as his address when applying for a vehicle title.

**SMITH's True Residence Is in Maryland, not Virginia**

27.     There is probable cause to believe that between August 21, 2020 (i.e. the date of SMITH's first known firearms purchase) and April 11, 2022 (i.e. the date of SMITH's last known firearms purchase), SMITH resided in Temple Hills, Maryland, not Virginia.  Thus, SMITH made false statements on his Forms 4473 when he stated that he resided in Virginia.

28.     I reviewed Maryland Motor Vehicle Administration ("MVA") documents and learned that on August 23, 2021, SMITH applied for certificate of title for a 2018 Volvo sedan ("VEHICLE 1") and listed on the application as the "Applicant's Street Address" SMITH's Maryland Residence.  I also learned that on March 23, 2018, SMITH applied for certificate of title for a 2015 Chevrolet sedan ("VEHICLE 2") and listed on the application as the "Applicant's Street Address" SMITH's Maryland Residence.  I also learned that on November 27, 2020, SMITH's wife, LaTasha Smith, applied for certificate of title for a 2021 Honda sport utility vehicle ("VEHICLE 3") listed on the application as the "Applicant's Street Address" SMITH's Maryland Residence.  I also learned the Maryland license plate identifiers for VEHICLE 1, VEHICLE 2, and VEHICLE 3.

29.     A query of a commercial License Plate Reader ("LPR") database showed that VEHICLE 1, VEHICLE 2, and VEHICLE 3 have been observed in Maryland and no other state.  Most of the observations occurred near SMITH's Maryland Residence in 2022, and during the late evening and early morning hours, when an individual would typically be sleeping in their residence.

30.     A commercial database commonly used by law enforcement associated SMITH with numerous addresses in Maryland and D.C., and only one Post Office Box in Virginia in 2022.

31. The Maryland Coordination and Analysis Center ("MCAC") provided information for SMITH showing employment in Maryland from 2016 to 2021. MCAC also provided information in their unemployment database that associated SMITH with SMITH's Maryland Residence.

32. The Virginia Fusion Center ("VFC") provided information for SMITH showing employment in Virginia in the third quarter of calendar year 2022 only, which includes the months of July, August, and September.

33. On September 26, 2022, a subpoena was issued to Block, Inc (CashApp) in the Eastern District of Virginia (22-3130) for subscriber information and other records associated with SMITH's PHONE NUMBER and other identifiers known for SMITH. The information disclosed pursuant to the subpoena showed that SMITH was the account holder of a CashApp account and that he provided SMITH's Maryland Residence as his address.

34. On August 18, 2022, a Federal Search Warrant (1:22-SW-449) was issued by the Honorable Theresa C. Buchanan, United States Magistrate Judge, in the Eastern District of Virginia for records and information associated with the cellular telephone ("SMITH's phone") assigned to SMITH's phone number. The subscriber and location data obtained from the information disclosed pursuant to the search warrant revealed that the user of SMITH's phone was SMITH, and that SMITH was a Maryland resident. None of the disclosed location data that reflected early morning hours when an individual would typically be sleeping in their residence showed SMITH's phone in Virginia. Also, none of the disclosed location data showed SMITH's phone in or near Newport News, where LOCATION 1 is located. The data also revealed that on multiple separate occasions corresponding to dates on Forms 4473 on which SMITH purchased

firearms, the user of SMITH's phone traveled from Temple Hills, Maryland, to the vicinity of the FFL at which SMITH purchased firearms each day, and then back to Temple Hills, Maryland.

35. Specifically, on April 6, 2022, SMITH's phone activated a cell site near SMITH's Maryland Residence throughout the morning, then activated a cell site near Trojan Arms, the FFL at which SMITH rendered payment for a firearm that day, and then activated a cell site near SMITH's Maryland Residence in the evening. On April 11, 2022, SMITH's phone activated a cell site near SMITH's Maryland Residence throughout the morning, then activated a cell site near Trojan Arms, where SMITH certified the purchase of a firearm that day, and then activated a cell site near SMITH's Maryland Residence in the evening. On April 14, 2022, SMITH's phone activated a cell site near SMITH's Maryland Residence throughout the morning, then activated a cell site near Trojan Arms, where SMITH took possession of a firearm that day, and then activated a cell site near SMITH's Maryland Residence in the evening. Similar patterns were identified in 2021, and 2020.

36. On January 25, 2023, a subpoena was issued to the Potomac Electric Power Company (Pepco) in the Eastern District of Virginia (23-338) for subscriber information and other records associated with SMITH's Maryland Residence and other identifiers known for SMITH. The information disclosed pursuant to the subpoena showed that SMITH was an account holder and that SMITH's Maryland Residence was listed as SMITH's mailing address. The information disclosed pursuant to the subpoena further showed that SMITH was removed from the account on July 19, 2022, approximately eleven weeks after law enforcement interviewed SMITH.

37. On January 25, 2023, a subpoena was issued to Truist Financial in the Eastern District of Virginia (23-344) for subscriber information and other records associated with SMITH's Maryland Residence and other identifiers known for SMITH. The information disclosed

pursuant to the subpoena showed that SMITH was an account holder and that SMITH's Maryland Residence was listed as SMITH's mailing address.

38. On January 25, 2023, a subpoena was issued to Navy Federal Credit Union in the Eastern District of Virginia (23-345) for subscriber information and other records associated with SMITH's Maryland Residence and other identifiers known for SMITH. The information disclosed pursuant to the subpoena showed that SMITH was an account holder and that SMITH's Maryland Residence was listed as SMITH's mailing address.

39. Based on this information, SMITH's cellular phone location data, SMITH's frequent use of a Maryland address to identify his home address, the lack of corroboration for SMITH's residency at any of the Virginia addresses he listed on Forms 4473 when purchasing firearms, SMITH's physical presence at a Maryland residence on May 2, 2022, and SMITH's statement that SMITH's wife owns that Maryland residence, there is reason to believe that SMITH resided with his wife in Maryland, during the time period in which he purchased numerous firearms in Virginia.

40. There is probable cause to believe that SMITH, while residing in Maryland, used LOCATION 1 OWNER's address in Newport News, Virginia, to obtain a Virginia driver's license and then used that Virginia driver's license to purchase 84 firearms in Virginia between August 21, 2020, and April 11, 2022. Specifically, in May and June of 2022, law enforcement interviewed four people who resided at the addresses in Virginia that are listed on SMITH's Virginia driver's license and Forms 4473. Of the three Virginia addresses SMITH used, one was not a valid address, and residents of the other two addresses stated that SMITH had never lived at those addresses. Additionally, location data associated with SMITH's phone showed that the user of SMITH's

phone is a Maryland resident, did not stay overnight in Virginia once, and did not ever travel to or near LOCATION 1.

**SMITH's Contact with a Convicted Felon**

41. Call detail records ("CDR") obtained from the information disclosed pursuant to the search warrant, 1:22-SW-449, mentioned above in paragraph 35, showed a list of phone numbers most frequently contacted by SMITH on days when SMITH was known to have purchased firearms from FFLs. A commercial database commonly used by law enforcement associated one of the phone numbers most frequently contacted by SMITH on those days with E. L. Queries of law enforcement databases revealed that E.L. was arrested for numerous firearms and narcotics offenses. On December 18, 2008, E.L. was sentenced to eighteen (18) months incarceration in the Superior Court of the District of Columbia for Distribution of a Controlled Substance. On December 13, 2010, in the United States District Court for the District of Columbia, E.L. was sentenced to sixty (60) months incarceration for violations of Title 18, United States Code, Section 924(c), Possession of a Firearm in Connection with a Crime of Violence or Drug Trafficking Crime, and to one-hundred, twenty (120) months incarceration for violations of Title 21, United States Code, Section 841(a)(1), Possession of Narcotics with Intent to Distribute.

## CONCLUSION

42. Based on the foregoing facts, I respectfully submit that probable cause exists to believe that SMITH made false statements with respect to the purchase of firearms, in violation of 18 U.S.C. § 924(a)(1)(A).

43. Based on the forgoing, I request that the Court issue the proposed arrest warrant.

Respectfully submitted,

**MATTHEW BROWN**
Digitally signed by MATTHEW BROWN
Date: 2023.04.12 20:47:06 -04'00'

Matthew Brown
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to in accordance with Fed. R. Crim. P. 4.1 by telephone on April 13, 2023.

**John F. Anderson**
Digitally signed by John F. Anderson
Date: 2023.04.13 15:30:30 -04'00'

The Honorable John F. Anderson
United States Magistrate Judge

13